United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PRAECIPIO CONSULTING, LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS HOWSER, et al.,<br><br>Defendants. | Case No. 25-cv-02927-JST   (PHK)<br><br>**ORDER RE: DISCOVERY DISPUTE REGARDING AUDIT DOCUMENTS**<br><br>Re: Dkt. 59 |

## INTRODUCTION

This case has been referred to the undersigned for all discovery purposes. *See* Dkt. 29. Now pending before the Court is a joint letter brief regarding a dispute concerning documents relating to an internal audit conducted at Praecipio Consulting. [Dkt. 59].

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the

scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. Id. Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the

2

discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

Under Rule 26, a party "who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). Further, a party "must supplement or correct its disclosure or response . . . as ordered by the court." Fed. R.

3

Civ. P. 26(e)(1)(B). The 1993 amendments to Rule 26(e) "clarif[y] that the obligation to supplement responses to formal discovery requests applies to interrogatories, requests for production, and requests for admissions, but not ordinarily to deposition testimony." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Further, "[t]he obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition[.]" *Id.* "[I]t is axiomatic that the duty to supplement is triggered only if the materials requested would have been responsive to a discovery request in the first instance." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396-97 (C.D. Cal. 2022) (denying motion to compel because the documents sought were not called for by the requests for production); *cf. Gamevice, Inc. v. Nintendo Co.*, No. 18-cv-01942-RS (TSH), 2019 WL 5565942, at *3 (N.D. Cal. Oct. 29, 2019) (granting motion to compel where target of the discovery agreed to produce the scope of documents sought but then changed positions later in an alleged "bait and switch," which justified order compelling production and supplementation).

## DISCUSSION

In this trade secret case, the present dispute relates to whether documents relating to an internal audit conducted by a consultant for Praecipio should be produced. [Dkt. 59 at 3]. Defendants argue that Plaintiff's CEO testified at deposition that the results of this audit were provided in writing and that such documents relaying the audit results—referred to as the "MSA" (Master Services Agreement) audit documents by the Parties—should be produced. *Id.* at 2-3. Defendants argue that Plaintiff's CEO's testimony appears to establish that this audit included internal review of "a risk that Praecipio was performing work for customers without contracts in place that include confidentiality provisions." *Id.* at 2. Defendants argue that the steps Plaintiff took to protect the confidentiality of its alleged trade secrets are relevant and discoverable, and thus this audit and the MSA documents should be produced. *Id.* at 1-2.

Plaintiff argues that the deposition testimony cited by Defendants is confusing (and was

4

confusing to the witness) because of the definition allegedly used by Defendants' counsel at the deposition of "NDA" (Non-Disclosure Agreement) to include an MSA. *Id.* at 3-4. Plaintiff represents that there was no audit of NDAs at Praecipio, ever. *Id.* at 3. Plaintiff argues that the witness was testifying about a broader audit of MSAs, which did occur, but the purpose of which "was unrelated to confidentiality provisions, but rather to ensure that official terms of engagement, such as agreed 'payment terms,' existed between Praecipio and each of its customers related to specific projects." *Id.* at 4. Plaintiff argues that the audit, related solely to MSAs, "identified risks entirely irrelevant to this litigation across Praecipio's business, such as lack of written payment terms for specific projects." *Id.* For these reasons, Plaintiff argues that no documents relating to an alleged "NDA audit" exist (and thus there are no such documents to produce) and that the documents relating to the MSA audit are not relevant. *Id.*

Defendants argue that the deposition testimony is clear that the MSA audit documents did refer to confidentiality provisions in MSAs and thus should be produced. *Id.* at 3. Defendants argue that, separate from the issue of confidentiality provisions, "documents related to Praecipio's overall business risk assessment are relevant to the issue of whether Defendants have caused Praecipio's damages, or whether Praecipio has incurred financial loses due to other reasons." *Id.* Defendants argue that the audit documents are thus relevant for this additional reason and should be produced, even if the audit was not related to confidentiality issues. *Id.*

The Parties attempted to meet and confer on this dispute, but could not resolve this dispute. Plaintiff offered to allow further deposition of the witness at issue, and further offered for Defendants to depose the consultant who conducted the audit, but Defendants did not agree to that offer. *Id.* at 4. Defendants argue here that Plaintiff failed to submit errata sheets for the CEO witness's deposition transcript to clarify the alleged confusion, but Plaintiff refused that procedure as "inappropriate and potentially misleading, as it would require substantial revision and clarification of a lengthy and nuanced exchange[.]" *Id.* at 4-5.

After reviewing the Parties' briefing, the Court issued an Order requiring submission of the disputed document for *in camera* review (referred to as the "MSA" document in the Parties' briefing), and Plaintiff submitted that document on October 27, 2025, as required. *See* Dkt. 60. The

5

Court reviewed the MSA document *in camera*, as well as Plaintiff's counsel's email addressing the same which represented that "[t]his is the only document related to the MSA in our possession. We confirm that there are no accompanying executive summaries or PowerPoint slides."

Following that *in camera* review, the Court issued an Order requiring submission of the following additional information:

1) A declaration from an officer or director of Praecipio with personal knowledge of the facts attesting to whether Praecipio or any of Praecipio's agents (including the consultant who performed the audit, Mr. Szalvay) has under their possession, custody, or control any other documents substantively addressing, referring to, referencing, summarizing, or in any way discussing the MSA document submitted for in camera review, including but not limited to any executive summaries, PowerPoint slides, or any other documents howsoever denominated or titled. [Dkt. 63 at 5]. The CEO of Praecipio submitted a declaration in response to this Order. [Dkt. 66]. Further, a member of the Board of Directors submitted a declaration in response to this Order. [Dkt. 67].

2) A declaration which (1) describes all steps taken by all of Plaintiff's counsel of record (or their agents or vendors) to conduct a reasonable, good faith search for documents in Plaintiff's possession, custody, or control which substantively address, refer to, reference, summarize, or in any way discuss the MSA document submitted for in camera review, including but not limited to any executive summaries, PowerPoint slides, or any other documents howsoever denominated or titled; (2) identifies by name and tile all custodians of Plaintiff whose files were searched for such documents; and (3) explains all bases for counsel's representation to the Court that the MSA document submitted for in camera review is "the only document related to the MSA in our possession" and "that there are no accompanying executive summaries or PowerPoint slides." [Dkt. 63 at 5]. Counsel for Praecipio submitted a declaration in response to this Order. [Dkt. 68].

3) For *in camera* review, a copy of the document referenced in the final paragraph of page thirteen of the MSA document. [Dkt. 63 at 5]. Counsel for Plaintiff submitted two versions of that document for *in camera* review and the Court has reviewed that

6

document.

4)   A copy of any document requests served by Defendants on Plaintiff prior to August 11, 2025 which sought production of "documents related to Praecipio's overall business risk assessment," as well as a copy of all responses served by Plaintiff to any such document requests. [Dkt. 63 at 6]. Counsel for Defendants submitted by email to the Court a copy of "Defendants' Amended First Set of Requests for Production to Plaintiff Praecipio Consulting, LLC; and Gaia Praecipio Buyer, Inc." as well as a copy of Plaintiff's objections and responses thereto, and specifically directed the Court to Request for Production No. 6 in response to the Court's Order.

Having reviewed these materials, the Court **FINDS** as follows:

First, the MSA audit document is, on its face, *not* an audit of confidentiality provisions in Praecipio's Master Services Agreements.  There is simply no discussion of NDAs or confidentiality provisions in the text of the MSA document.  The Defendants' mistaken belief that this MSA document referenced confidentiality provisions appears to be the result of misunderstanding or imprecision at the deposition of Plaintiff's CEO.  The record submitted does not explain why counsel for both Parties did not undertake more efforts at the deposition to clarify the record (either during direct questioning or on redirect by Plaintiff's own counsel) and obviate this dispute. Plaintiff's argument that submitting errata to the deposition transcript after the fact was somehow "inappropriate or misleading" ignores the express text of Rule 30:  a deponent has the right (within thirty days of receiving notice that the transcript is available) "(A) to review the transcript . . . and (B) if there are changes in form *or substance*, to sign a statement listing the changes and the reasons for making them."  Fed. R. Civ. P. 30(e)(1) (emphasis added).  The advisory committee notes indicate that a deponent has the right under this rule "to indicate *any changes in* form or *substance*." Fed. R. Civ. P. 30 advisory committee's note to 1972 amendment (emphasis added).  Here, where counsel for Plaintiff was clearly aware of the alleged misunderstanding at the deposition, the better practice would have been to submit the errata and again potentially obviate this entire dispute.  The witness's failure to do so left Defendants with the only record available.

Defendants' argument that the MSA document is relevant (and thus should be compelled for

7

1  production) because it relates to confidentiality issues is thus unfounded, and on these grounds, the
2  motion to compel fails.

3  However, as discussed above, Defendants have argued that the MSA audit document is also
4  relevant to the issue of alternate causation for Plaintiff's alleged loss of revenues and hence relevant
5  to the issue of damages. Defendants' Request for Production No. 6 (relied on by Defendants' in
6  their submission of the discovery request to the Court) seeks the following:

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATED TO YOUR alleged damages caused by DEFENDANTS' alleged misappropriation of the ALLEGED TRADE SECRETS or unauthorized possession, disclosure, or use of ALLEGED CONFIDENTIAL INFORMATION, including but not limited to any DOCUMENTS related to loss of customers, revenues, or opportunities.

In the response to this request (lodged with the Court, as noted above), Plaintiff asserted various objections (including as to burden) and responded that, subject to these objections, "Plaintiffs will produce non-privileged, responsive documents within their possession, custody, or control following a reasonable and diligent search."

Based on the Court's *in camera* review, the Court finds that this MSA audit document is within the broad scope of relevance for purposes of discovery. Specifically, this MSA document is responsive to Request for Production No. 6 broadly construed, although the Court makes no findings (express or implied) as to relevance or admissibility of this document for trial or other purposes. Further, any objection as to burden is inapplicable because the document has been found and is already in Plaintiff's counsel's possession (and the document is not unusually lengthy or formatted in any specialized way which creates a burden to process for production).

Accordingly, the Court finds that this MSA document (referred to in its filename as "MSA work (5)") **SHALL** be produced because it is within the scope of relevance to damages issues and proportional to the needs of the case, and on those grounds Defendants' motion to compel its production is **GRANTED**.

As noted above, the Court ordered counsel for Plaintiff to submit a declaration to explain the bases for representations that no other MSA-related documents exist and to confirm that (again

8

contrary to allegedly confusing deposition testimony from Praecipio's CEO) no executive summaries or other documents exist relating to that audit. [Dkt. 63 at 5]. Counsel's declaration filed in response to the Court's previous Order identified additional versions of this MSA document (with file names of "v1" through "v17") which "show edits to the document." [Dkt. 68 at ¶ 15(d)]. Praecipio submitted those seventeen versions of the MSA document for *in camera* review. [Dkt. 68 at ¶ 15]. The Court has reviewed these seventeen versions of the MSA document. Based on this review and for all the reasons discussed above with regard to the originally submitted MSA document (filename "MSA work (5)"), the Court finds that these seventeen versions of the MSA document are within the broad scope of relevance for purposes of discovery and broadly responsive to Request for Production No. 6. Again, the Court makes no findings (express or implied) as to relevance or admissibility of these documents for trial or other purposes. The Court accordingly **ORDERS** that all seventeen versions of the MSA document (filenames "v1" through "v17") shall be produced, in addition to the originally submitted "MSA document" referred to above.

As noted above, in its previous Order, the Court ordered submission for *in camera* review of another document which is referenced within the text of the MSA document, and the Court has reviewed the two versions of that document submitted by Plaintiff. Further, Plaintiff's counsel's declaration discusses that "referenced document" in her declaration submitted to the Court in connection with this matter. [Dkt. 68 at ¶ 16-17; *see also* Dkt. 69-2 (sealed version of declaration) at ¶ 17]. The Court finds that this additional "referenced document" (*i.e.*, referred to in the text of the MSA document) is not related to confidentiality provisions in MSAs or NDAs, and further is not responsive to Request for Production No. 6. Accordingly, the Court finds that neither version of this additional document is within the scope of relevance for purposes of discovery and therefore shall not be produced.

As noted above, the Court ordered counsel for Plaintiff to submit a declaration to explain the bases for representations that no other MSA-related documents exist. [Dkt. 63 at 5]. Counsel's declaration filed in response to this previous Order identified a further document found during their search (referred to as the "All Priorities_out_to_Board" document) which does mention that MSA audit, and Praecipio submitted that document for *in camera* review. [Dkt. 68 at ¶ 6]. The Court has

9

reviewed this "All Priorities_out_to_Board" document. Based on this review, the Court finds that this "All Priorities_out_to_Board" document is within the broad scope of relevance for purposes of discovery and broadly responsive to Request for Production No. 6. Again, the Court makes no findings (express or implied) as to relevance or admissibility of this document for trial or other purposes. The Court accordingly **ORDERS** that this "All Priorities_out_to_Board" document shall be produced, in addition to the "MSA document" referred to above.

In addition, Plaintiff's counsel's declaration filed in response to this Order identified two Slack bulletins (or messages) found during their search which does mention the MSA process, and Praecipio submitted these two Slack bulletins for *in camera* review. [Dkt. 68 at ¶ 15(a)]. The Court has reviewed these two Slack bulletins. Based on this review, the Court finds that that these two Slack bulletins are within the broad scope of relevance for purposes of discovery and broadly responsive to Request for Production No. 6. Again, the Court makes no findings (express or implied) as to relevance or admissibility of these documents for trial or other purposes. The Court accordingly **ORDERS** that these two Slack bulletins (with filenames "bulletin_1" and "bulletin_2") shall be produced, in addition to the other documents referred to above.

The Court further notes that, based on its *in camera* review, one of these Slack bulletins (filename "bulletin_1") refers to and appears to hyperlink to "Praecipio's standard MSA template." To the extent this hyperlinked "Praecipio MSA (Boiler Plate)" document has not been produced in discovery, the Court **ORDERS** this MSA template document to be produced as well, for the same reasons justifying the production of the underlying Slack message or bulletin.

As noted above, the Court ordered an officer or director knowledgeable within Praecipio to submit a declaration as well. [Dkt. 63 at 4-5]. As discussed, Praecipio's CEO Mr. Lewis submitted a declaration in response to this Order. [Dkt. 66]. That declaration identified a further document found during their search, referred to as the "Accounts Without MSAs" document. *Id.* at ¶ 10. Plaintiff's counsel's declaration also appears to discuss this document, but refers to it confusingly as the "MSA Cleanup Spreadsheet." [Dkt. 68 at ¶ 15(b)]. Regardless of the name of the spreadsheet, Mr. Lewis attests that this "Accounts Without MSAs" document is a "tracking tool for the sales team." [Dkt. 66 at ¶ 10]. Plaintiff submitted that document for *in camera* review and the Court has

reviewed this document as well. Based on this review, the Court finds that this "Accounts Without MSAs" document is within the broad scope of relevance for purposes of discovery and broadly responsive to Request for Production No. 6. Again, the Court makes no findings (express or implied) as to relevance or admissibility of this document for trial or other purposes. The Court accordingly **ORDERS** that this "Accounts Without MSAs" document (which the Court assumes is the same document as the "MSA Cleanup Spreadsheet") shall be produced, in addition to the other documents whose production is ordered above.

## CONCLUSION

For all the reasons discussed herein, the Court **GRANTS-IN-PART** Defendants' motion to compel and, as detailed herein, the Court **ORDERS** Plaintiff to produce in discovery the various documents discussed above (designated as appropriate under the Protective Order) to Defendants' counsel. Given that the documents are already in counsel's possession and the relatively short length of these documents (and the fact that there are only two documents at issue), the production **SHALL** be completed on or before **December 4, 2025**. Plaintiff is further **ORDERED** to file a status report on **December 5, 2025** reporting on the completion of this document production.

Further, for clarity, to the extent Defendants have sought to compel production of documents which do not exist, the Court **DENIES** Defendants' motion.

This **RESOLVES** Dkt. 59.

**IT IS SO ORDERED.**

Dated: December 3, 2025

_____
PETER H. KANG
United States Magistrate Judge