UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PRAECIPIO CONSULTING, LLC, et al.,
Plaintiffs,
v.
NICHOLAS HOWSER, et al.,
Defendants.

Case No. 25-cv-02927-JST

**ORDER ON MOTION FOR DEFAULT JUDGMENT SANCTION**

Re: ECF No. 73

Before the Court is a motion for a default judgment sanction against Defendant James Areias filed by Plaintiffs Praecipio Consulting, LLC and Gaia Praecipio Buyer, Inc. ("Praecipio"). Praecipio requests a terminating sanction because Areias destroyed two company laptops shortly after departing Praecipio to work at a competitor firm and within days after receiving an evidence preservation demand letter from Praecipio. Although a default judgment sanction is an extreme measure, it is supported by the conduct in this case. As to certain claims, however, the Court finds that lesser measures will adequately redress Areias's spoliation. The Court will therefore grant the motion in part, entering default judgment on the first claim and instructing the jury to consider as having been established certain elements of the second and fifth claims.

**I. BACKGROUND**

The Court recounts the background provided by the parties to the extent relevant to the present motion. Praecipio is a business process and information technology ("IT") consulting firm specializing in the product suite of Atlassian, a company that makes collaboration software. ECF No. 73-3 at 2. "Praecipio licenses Atlassian products and provides services for those products to its clients (e.g., set-up and optimization)." *Id.* In August 2022, Praecipio acquired a competitor licensor and seller of Atlassian products, Coyote Creek Consulting, LLC ("Coyote Creek"). *Id.*

United States District Court
Northern District of California

As part of the acquisition, long-time Coyote Creek employees Nicholas Howser and James Areias joined Praecipio. *Id*. Coyote Creek had employed Howser since 2012 and Areias since 2007. *Id*.

Howser and Areias received equity packages at Praecipio. *Id*. As part of those packages, they signed a Subscription Agreement, ECF No. 73-3 at 18, 33, and a Restricted Unit Award Agreement ("RUAA"), *id*. at 46, 61, which included provisions related to confidentiality and the return of company property upon termination or resignation. ECF No. 75-2 at 10–11.

Howser began interviewing for a job with Stagil Corp., d/b/a catworkx U.S. ("catworkx"), a Praecipio competitor, in August 2024. ECF No. 75-5 at 2. On November 4, 2024, Howser signed a letter of intent to join catworkx. ECF No. 73-1 at 44. On November 15, Howser resigned from Praecipio effective immediately. *Id*. at 8. He started at catworkx on January 6, 2025. *Id*. at 9.

On January 2, 2025, Areias gave Praecipio two-week notice of his resignation. ECF No. 75-3 at 3. The next day, citing management's failure to address his concerns regarding unpaid commissions, Areias changed course and terminated his employment effective immediately. *Id*. On January 8, 2025, Areias started at catworkx as an Account Executive. ECF No. 74-4 at 3.

At the time of his resignation, Areias possessed three company laptops: (1) a Surface Pro laptop, (2) a Lenovo laptop, and (3) a Dell laptop. ECF No. 75-2 at 13. The Dell laptop was the oldest. ECF No. 90-2 at 13. Areias received the Lenovo laptop from Coyote Creek in 2018 or 2019, at which point he understood the Dell laptop to have been given to him for personal or work use. *Id*.; ECF No. 91-1 at 109. He received the Surface Pro laptop in 2024. *Id*. He used the Lenovo most frequently because it was faster and more convenient, although he sometimes also used the Surface Pro instead. ECF No. 74-4 at 18; ECF No. 91-1 at 108–109. Areias also possessed a personal HP laptop. *Id*. at 30.

On January 2, the same day that he gave notice, Areias transferred from the Lenovo laptop to a personal Western Digital external hard drive (the "WD drive") about 15,000 personal and Praecipio files, including folders entitled "Clients" and "Marketing." ECF No. 90-2 at 15; ECF

No. 74-4 at 29, 34.[1] That process involved selecting specific folders containing information that he wished to back up. *Id.* at 28. In his deposition, Areias stated that he "rewrote" the Lenovo laptop between January 2 and 5, effectively wiping it. ECF No. 90-2 at 21. He stated that he did not plan to use the Lenovo laptop after leaving Praecipio because he feared Praecipio might be able to monitor his usage. ECF No. 90-2 at 14. Rather, he planned to recycle it. ECF No. 73-1 at 56; ECF No. 91-2 at 3.

On January 3, 2025, Praecipio's Head of Human Resources, Allison Flaten, informed Areias that another employee would contact him to provide a shipping label to return his "Praecipio issued laptop." ECF No. 90-20 at 3. Areias received the label on January 13, 2025, and put the Surface Pro laptop in the mail shortly thereafter. ECF No. 90-2 at 15.

On January 13 and January 14, Praecipio sent Areias two letters reminding him of his contractual obligations, threatening legal action, and demanding that he preserve evidence. The January 13 letter describes Areias's confidentiality and nondisparagement obligations pursuant to the Subscription Agreement, stating that should Areias violate such obligations, "Praecipio is prepared to seek an injunction and such other relief to which it is entitled under the law." ECF No. 91-1 at 188–89. The January 14 letter, sent through counsel to Areias and *his* counsel, covers similar ground and discusses Areias's duty to return "all Praecipio property." *Id.* at 192–93. The letter states that "[y]ou have an obligation to return your Company laptop and not to misuse or disclose to third parties any of Praecipio's confidential and proprietary information." *Id.* at 193. It further states that "[y]our failure to return your Company laptop upon your departure from the Company, and your coordinated move to catworkx with other Praecipio employees, raises serious questions about your intentions and your willingness to comply with your legal obligations." *Id.* The letter demands that Areias "[p]reserve all relevant electronic and tangible documents and records, including on all of your personal electronic devices." *Id.* at 194. Finally, the letter advises that Areias would expose catworkx to legal liability by sharing with it "any Praecipio

[1] The record and briefs are ambiguous as to whether the transfer involved about 15,000 files total, or whether the 15,000 figure refers only to Praecipio-related files. ECF No. 74-4 at 29; ECF No. 97 at 10; ECF No. 91-1 at 111.

confidential information, trade secrets, or documents." *Id*.

Areias's counsel replied to the January 14 letter on January 17, representing that Areias had already returned his company-issued laptop, threatening legal action for defamation, and demanding preservation of documents related to Areias and Howser's employment, resignation, and subsequent communications. ECF No. 75-13 at 2.

The same day, Areias broke the hard drive of the Lenovo laptop into "10+ pieces" and recycled the laptop at Ranch Town Recycling. ECF No. 73-1 at 103; ECF No. 91-1 at 109–10. In his deposition, he stated that an employee at Ranch Town Recycling had told him they did not accept hard drives and advised him to destroy it. ECF No. 73-1 at 62. "A week later, he saw the Dell Laptop under a pile in his office and recycled it." ECF No. 90-2 at 15; *see* ECF No. 73-1 at 52–53.

The complaint was filed on March 28, 2025, bringing claims for breach of contract, breach of the duty of loyalty, violations of the Defend Trade Secrets Act ("DTSA"), and conversion. ECF No. 1. At that time, Areias and Howser promptly retained their current counsel, surrendered possession of their personal laptops and external drives, and provided access to their personal accounts to a forensic vendor. ECF No. 90-2 at 17. In discovery, Areias produced the 15,000 files copied from the Lenovo Laptop to the hard drive on January 2, 2025. ECF No. 90-2 at 19.

On November 13, 2025, Praecipio filed a motion for a default judgment sanction to address Areias's destruction of the two older laptops. ECF No. 73. Individual defendants Areias and Howser ("Defendants") opposed on December 10, 2025. ECF No. 91. Corporate Defendant catworkx filed a separate opposition on December 10, 2025. ECF No. 93. Praecipio replied on December 22, 2025. ECF No. 97.

The Court held a hearing on the motion on January 22, 2026. "At the hearing, the Court expressed interest in evaluating as a sanction a jury instruction that one or more elements of Plaintiffs' claims had been established and did not require further proof." ECF No. 119 at 1. The Court subsequently ordered the parties to submit a joint supplemental brief "that lists each element of each relevant claim and provides the parties' respective views as to whether the destroyed evidence warrants a finding that the element has been satisfied." *Id*. at 1–2. The Court received

the parties' joint brief on March 27, 2026. ECF No. 124.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) governs the imposition of sanctions for spoliating electronically stored information ("ESI"). Under Rule 37(e), a court must assess whether (1) the ESI at issue "should have been preserved in the anticipation or conduct of litigation"; (2) the non-moving party "failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these conditions are met, sanctions may be imposed through one of two routes. *Id*. First, if the Court finds that the loss of the information prejudiced another party, then Rule 37(e)(1) authorizes it to impose "measures no greater than necessary to cure the prejudice." *See Yela Fiduciary Servs., LLC for Est. of Sund v. Benton Cnty.*, No. 6:20-CV-01925-MK, 2022 WL 17666400, at *9 (D. Or. Dec. 14, 2022). Alternatively, if the court finds that an offending plaintiff "acted with the intent to deprive another party of the information's use in the litigation," then Rule 37(e)(2) authorizes stiffer sanctions: an adverse inference, dismissal, or default judgment. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024).

Rule 37(e)(1) and 37(e)(2) have distinct requirements and consequences. In the Ninth Circuit, an adverse inference, dismissal, or default judgment sanction for ESI may be granted *only* through 37(e)(2), not 37(e)(1). *See Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024) (relying on the Rule 37(e)(2) language that "only upon" a finding of intent can the enumerated sanctions be imposed, and characterizing the intent requirement as "a more demanding standard" than under Rule 37(e)(1)). However, "[u]nlike Rule 37(e)(1), there is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)." *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of

information that would have favored its position." *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *see also Jones*, 95 F.4th at 736.

Courts may also impose spoliation sanctions under their inherent authority or under Rule 37(b), which authorizes sanctions against a party who "fails to obey an order to provide or permit discovery" concerning tangible or physical evidence. *Columbia Pictures, Inc. v. Bunnell*, No. 2:06CV01093 FMC-JCX, 2007 WL 4877701, at *4–5 (C.D. Cal. Dec. 13, 2007). To determine whether default judgment is an appropriate sanction under inherent judicial authority or Rule 37(b), courts in this circuit apply the factors laid out in *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).[2] *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 n.4 (9th Cir. 2006).

Because "Rule 37(e) provides the exclusive authority for the imposition of sanctions for the spoliation of ESI," however, the law governing courts' inherent authority and Rule 37(b) does not apply. *Griffith v. TikTok, Inc.*, No. ED CV 23-964-SB(EX), 2024 WL 4003908, at *1 (C.D. Cal. Aug. 13, 2024). Although "[t]he *Anheuser-Busch* test generally controls the imposition of terminating sanctions," a court considering terminating sanctions under Rule 37(e)(2) "need only find that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI." *Jones*, 95 F.4th at 735 (citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment). Surprisingly, although the parties agree that the spoliated data was ESI, they each assume that the Court should apply the *Anheuser-Busch* factors. In light of the clear language from *Jones* and the absence of post-*Jones* authority supporting the parties' view, the Court declines to apply the *Anheuser-Busch* factors to Rule 37(e)(2) sanctions. *See Gregory*, 118 F.4th at 1080 (characterizing *Jones* as holding that when Rule 37(e)(2) applies, its standards govern rather than the *Anheuser-Busch* standard applicable to inherent-authority sanctions); *see Twins Special Co. v. Twins Special, LLC*, No. 21-CV-221-JES-DDL, 2025 WL 1292528, at *15 (S.D. Cal. May 5,

---

[2] The *Anheuser-Busch* factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." 69 F.3d at 348.

2025) (analyzing the *Anheuser-Busch* factors in deciding sanctions under courts' inherent authority, but not in deciding Rule 37(e)(2) sanctions); *Heit v. Livingston*, No. 2:23-CV-00507-BLW, 2025 WL 588121, at *4 (D. Idaho Feb. 24, 2025) (same).

The applicable "standard of proof for spoliation sanctions is a preponderance of the evidence." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *see Morehead v. City of Oxnard*, No. 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) ("The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2024 WL 4823938, at *13 (N.D. Cal. Nov. 15, 2024) (finding preponderance of the evidence to be the appropriate standard).

## IV. DISCUSSION

Defendants readily admit that, days after he received the January 14 letter, Areias destroyed two Praecipio laptops and broke one of the hard drives into "10+ pieces." They dispute whether that conduct warrants a terminating sanction. Analyzing the Rule 37(e)(2) factors as set forth in *Jones*, the Court concludes that a default judgment sanction against Areias is warranted.

In the joint supplemental briefing addressing the elements of each claim for which Praecipio seeks default judgment, the parties also provide arguments concerning the prejudicial impacts of Areias's spoliation. Having considered those arguments, the Court grants default judgment only as to the first claim. As to the second and fifth claims, the Court will instruct the jury to consider certain elements of those claims as having been conclusively established.

### A. Rule 37(e)(2) Factors

#### 1. Duty to Preserve Evidence

Under Rule 37(e), a court must assess whether the ESI at issue "should have been preserved in the anticipation or conduct of litigation." Because Areias destroyed his two company laptops approximately three and ten days, respectively, after receiving a letter threatening legal action and demanding evidence preservation, this first factor is easily met. ECF No. 73-1 at 52–53. In both the January 13 and January 14 letters, Praecipio reminded Areias of his alleged

confidentiality and nondisparagement obligations and threatened to seek "an injunction and such other relief to which it is entitled" against Areias and any third parties with which he shared confidential information, including catworkx. ECF No. 91-1 at 189; *see also id*. at 193, 194. The January 14 letter demanded that Areias return "all Praecipio property" including "[his] Company laptop." ECF No. 91-1 at 192–93. Importantly, the letter demanded that Areias "[p]reserve all relevant electronic and tangible documents and records, including on all of your personal electronic devices." *Id*. at 194. Defendants' assertion that these letters "did not trigger any duty to preserve evidence" because "[n]othing in the letters put [Areias] on notice of potential litigation" therefore strains credulity. ECF No. 90-2 at 21.

"Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree [it is triggered] as soon as a potential claim is identified." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012). Evidence preservation letters such as the one received by Areias, which identify potential legal theories and demand preservation of evidence, therefore suffice. *See Scalia v. Cnty. of Kern*, 658 F. Supp. 3d 809, 815–16 (E.D. Cal. 2023) (finding duty to preserve evidence triggered by an evidence preservation letter); *James et al. v. US Bancorp et al.*, 2021 WL 1890787, at *6–7 (C.D. Cal. May 11, 2021) (same). That Areias responded to the January 14 letter through counsel, rebutting the implications contained therein, threatening to bring defamation claims, and *also* demanding evidence preservation, further strengthens the Court's conviction that the duty to preserve evidence had been triggered. ECF No. 75-13 at 2–5.

Defendants' arguments that the letter did not trigger a duty to preserve evidence are unavailing. They assert that the letters did not put them on notice of litigation because they "were just a final step in the chain of Praecipio's efforts to keep Jimmy from competing," but efforts by Praecipio to prevent Areias from competing would be a *further* reason to anticipate potential litigation. ECF No. 90-2 at 7. Similarly, Defendants suggest that because the letters did not allege any specific breach of confidentiality by Areias and Praecipio was aware of none at the time, the letters could not have constituted notice of potential litigation on that basis. ECF No. 90-2 at 21. But whether Praecipio had already obtained the evidence that it might use to *prove* certain claims

is not relevant to determining whether Defendants were on notice of potential litigation. It is sufficient that the letter outlined Areias's purported obligations, threatened legal action should those obligations be breached, and demanded preservation of corresponding evidence. *See Apple Inc.*, 888 F. Supp. 2d at 991. Defendants finally argue that the "notice was inappropriate [] in the absence of any evidence of misconduct," but they provide no reasoning or authority to support that proposition. ECF No. 90-2 at 21.

The January 14 letter was sufficient to trigger Areias's duty to preserve evidence.

**2. Failure to Take Reasonable Steps to Preserve the ESI**

Areias's failure to "take reasonable steps to preserve" the ESI is also beyond serious dispute. Fed. R. Civ. P. 37(e). Three days after receiving the January 14 letter, and the same day that his attorney responded to it, Areias removed the hard drive from his Lenovo laptop, broke it into "10+ pieces," and recycled the computer at a recycling center. ECF No. 73-1 at 103. He recycled his Dell laptop at the same center the following week, on approximately January 24, 2025. ECF No. 73-1 at 52. Beyond merely failing to preserve the ESI, Areias took affirmative—indeed, drastic—steps to destroy it. *See Bungie, Inc. v. AimJunkies.com*, No. C21-0811 TSZ, 2023 WL 7184427, at *7 (W.D. Wash. Nov. 1, 2023) ("Because he admitted to willfully erasing the four hard drives, except for the five transferred files, the Court finds that [the spoiling party] failed to take reasonable steps to preserve significant evidence.").

Defendants assert that because Areias "wiped" the Dell and Lenovo laptops before receiving the January 13 and 14 letters, there was no spoliation because nothing remained to preserve. ECF No. 90-2 at 7. With respect to the Dell laptop, Areias stated in his deposition that he "had a [Company] engineer wipe the Dell Laptop after it was given to him," "approximately [seven] years ago," and that "he did not use or turn on the Dell Laptop after 2018." ECF No. 90-2 at 13. He instead used his Lenovo laptop, even after he was issued a newer Surface Pro laptop one year ago. *Id.* With respect to the Lenovo laptop, Areias stated in his deposition that he "rewrote" or wiped it between January 2 and 5, 2025. ECF No. 90-2 at 21. Areias's deposition testimony is Defendants' only evidence that the Lenovo laptop hard drive was wiped before it was destroyed.

Praecipio identifies several reasons to doubt the credibility of Areias's testimony that he

United States District Court
Northern District of California

had wiped the Lenovo hard drive prior to receiving the evidence preservation letter. *See* ECF No. 97 at 9–10. Areias's counsel first represented to Praecipio that he rewrote the Lenovo laptop on December 31, 2024. ECF No. 73-1 at 103. But after discovery revealed that Areias had transferred 15,000 files from the Lenovo laptop to the WD drive in early January, Areias revised his estimate of when he had rewritten the Lenovo to January 2 to 5, 2025. ECF No. 97 at 9. Praecipio also points out that breaking a hard drive that had already been wiped into 10+ pieces would be unnecessary. ECF No. 97 at 10. And Areias has provided no explanation for his decision except that an employee at the recycling center advised him to do so. ECF No. 73-1 at 62.

In light of these credibility issues and the uncontroverted evidence that Areias broke the Lenovo hard drive into "10+ pieces," the Court concludes that Areias failed to take reasonable steps to preserve the ESI at issue.

**3. Restoration or Replacement of Lost ESI**

Praecipio asserts that the data stored on the Lenovo laptop has been irreplaceably lost and cannot be restored or replaced. Fed R. Civ. P. 37(e). Defendants do not suggest that the hard drive can be repaired or reconstructed.

Defendants argue, however, that "Plaintiffs have not established that any specific relevant information from the Lenovo Laptop is irreplaceably lost" because of the early January file transfer to the WD drive. ECF No. 90-2 at 25. There are several problems with Defendants' position. First, Areias's own testimony is that the early January file transfer was not a complete backup because Areias chose which files and folders to transfer. ECF No. ECF No. 74-4 at 28. Moreover, even if the transfer had been a comprehensive backup, it was performed about two weeks before Areias shredded the laptop. Those two weeks encompassed the end of Areias's employment at Praecipio, the beginning of his employment at catworkx, and the period in between, and are therefore likely important to Praecipio's claims that Areias misappropriated Praecipio's trade secrets for catworkx's benefit. ECF No. 75-2 at 22.

As Praecipio notes, metadata and usage history associated with the 15,000 transferred files was not captured in the transfer and have also been irreparably lost. ECF No. 75-2 at 23 n.6; ECF

No. 97 at 10. Specifically, Praecipio's expert identifies the following categories of data as destroyed: "(1) the information regarding possible USB interactions, which may include file opening, modification, and saving; (2) the creation/copying of additional files; (3) internet browsing history and activity, which may include access and uploading to unidentified cloud storage and email accounts; and (4) emails from locally saved email accounts, which may have been used to exchange information." ECF 73-2 ¶ 15. In its supplemental briefing, Praecipio refines slightly its description of the lost metadata: "registry files showing which trade secret documents Areias opened, jump-lists revealing file access patterns, browser history documenting any coordination with catworkx, and print-spool records showing what he printed." ECF No. 124 at 12. Such metadata may show, for instance, when Areias accessed confidential Praecipio property or trade secrets relative to his points of contact with catworkx.

Although Defendants produced in discovery the files transferred to the WD drive, those files did not include files Areias chose not to transfer, files created or modified in the two weeks between the transfer and the destruction of the Lenovo hard drive, and metadata. The Court concludes that ESI contained on the Lenovo hard drive has been lost and cannot be restored or replaced.

**4. Intent**

"[U]pon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may impose an adverse inference, dismissal, or default judgment. Fed. R. Civ. P. 37(e)(2). "Rule 37(e) does not define "intent," but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735 (citing *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023); Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *see also Phan v. Costco Wholesale Corp.*, No. 19-5713, 2020 WL 5074349, at *2 (N.D. Cal. Aug. 24, 2020) (defining intent under Rule 37(e) to mean "the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations"). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the

intent required for Rule 37(e)(2) sanctions." *Jones*, 95 F.4th at 735 (citing *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)). "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *Id*. (citing *Laub v. Horbaczewski*, No. CV 17-6210-JAK, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)).

In *Lee v. County of Los Angeles*, a sister district court synthesized *Jones* and other authorities to set out six factors relevant to determining intent: "(1) the context of the deletion, including whether the deletion was driven by the deleting party's financial considerations; (2) the 'timing of the evidence's loss,' which is '[t]he most decisive factor' in the assessment; (3) whether there was 'selective preservation' of any data; (4) whether the deleting party attempted to recover the data; (5) 'the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure),' and (6) 'the existence of institutional policies on preservation.'" No. 2:23-CV-06875-GW-MAA, 2025 WL 2505484, at *10 (C.D. Cal. Aug. 29, 2025), *reconsideration denied*, No. CV 23-6875-GW-MAAX, 2025 WL 3211209 (C.D. Cal. Oct. 14, 2025). In *Lee*, the court also concluded that "a party may be found to have acted with a Rule 37(e)(2) intent to deprive where, among other things, 'the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.'" *Id*. (quoting *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (internal citation omitted)).

The Court agrees with Praecipio that the evidence supports a finding of intent. *See* ECF No. 75-2 at 19 n.5. The spoliation was not driven by financial considerations or pursuant to an institutional file retention policy. The method of deletion was remarkably affirmative. Areias located and traveled to a recycling center and separately broke the metal-and-electronics hard drive into more than ten pieces, presumably using some sort of tool. Areias selectively preserved some data by backing it up to his hard drive, which weighs in favor of a finding of intent. *See Lee*, 2025 WL 2505484, at *14. And the timing—which is the second and "most decisive" factor—is damning. Areias destroyed his hard drive three days after receiving an evidence preservation letter.[3]

[3] The Court does not weigh the *Lee* factor concerning the deleting party's efforts to recoup the data, because any such efforts would have been futile.

Finally, "the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Id.* at *10. Defendants assert that "[c]onsistent with Praecipio's lenient laptop policy,[4] [Areias] promptly returned his most current laptop to Praecipio and retained the old Dell and Lenovo laptops as his personal property." ECF No. 90-2 at 7, 22–23. The Court finds this narrative implausible: Defendants have not attempted to explain why Areias would retain for his own use devices that he planned to destroy, and why he would not instead return those devices to Praecipio when requested. Defendants argue that Areias "believed the Dell Laptop and Lenovo Laptop belonged to him," ECF No. 90-2 at 16, but his ownership over the laptops would not negate their relevance as evidence, especially considering that he used the Lenovo laptop as his work computer. The Court also notes that the evidence preservation letter specifically requested that Areias "[p]reserve all relevant electronic and tangible documents and records, *including on all of your personal electronic devices*." ECF No. 91-1 at 194 (emphasis added).

Defendants also aver that Areias was justified in retaining the older laptops because Praecipio never requested that they be returned. ECF No. 90-2 at 8, 21, 23. Rather, "[e]very single communication from Praecipio or DLA Piper to [Areias] referenced a 'laptop' (singular), even though Praecipio knew [Areias] had possession of the older Lenovo [l]aptop." *Id.* at 23. Areias therefore "believed at the time that DLA's preservation demands did not extend to other laptops." *Id.* But the assertion that Areias did not know he should return or at least preserve the laptop *on which he had been performing most of his work for Praecipio for years*, like some of Defendants' other positions, is difficult to credit.

The Court agrees with Praecipio that "Areias provides no reasonable explanation for why, after possessing these laptops for years, he decided to suddenly destroy them in such a drastic manner in the days that followed receiving the preservation letter." ECF No. 97 at 5. The Rule

[4] Defendants' opposition brief lists several departing employees, including Howser, who were allowed to retain company laptops without any further instruction directing them to delete or protect confidential information. ECF No. 90-2 at 7, 10, 2. This fact does not appear to be relevant to Praecipio's request for a default judgment sanction on the basis of Areias's destruction of his laptops after he received an evidence preservation demand letter.

37(e)(2) intent requirement is satisfied.

**5. Lesser Sanctions**

In the Ninth Circuit, terminating sanctions under Rule 37(e)(2) also require the court to find that "lesser sanctions are insufficient to address the loss of the ESI." *Jones*, 95 F.4th at 735. In general, "[a] court may sanction spoliation by: imposing monetary sanctions; instructing the jury to draw an adverse inference against the despoiling party; excluding testimony based on despoiled evidence proffered by the despoiling party; or, if willfulness is found, entering default judgment against the despoiling party." *Columbia Pictures*, No. 2:06CV01093 FMC–JCX, 2007 WL 4877701, at *4. "Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation." *Rodriguez v. Cnty. of Los Angeles*, No. CV 10-6342 CBM(AJWX), 2013 WL 12122299, at *2 (C.D. Cal. Feb. 25, 2013) (quoting *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). "They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." *Id.*

Although "Rule 37(e)(2) does not require a finding of prejudice before an award of sanctions under that subsection . . . it[ i]s worth explaining why there[ i]s prejudice here, because that prejudice supports both the determination of what sanctions are appropriate and the finding of intent." *In re Vaxart, Inc. Sec. Litig.*, No. 20-CV-05949-VC, 2025 WL 1865848, at *6 n.9 (N.D. Cal. July 7, 2025).

Praecipio identifies several claims to which evidence destroyed by Areias is relevant. First, Praecipio alleges that Areias accessed, retained, destroyed, and used Praecipio's trade secrets, including proprietary client lists and data from Salesforce, in violation of the DTSA. ECF No. 75-2 at 22. Areias's spoliation prevents Praecipio from discovering the full scope of trade secret information that Areias accessed, when he accessed it, whether he printed or copied it, and whether Areias transferred trade secrets to another device. *Id.* It prevents Praecipio from connecting Areias's use of documents containing trade secrets to communications with his new employer or solicitations to customers. ECF No. 124 at 22–25.

Praecipio also brings a breach of contract claim under the Subscription Agreement and RUAA against Areias for disclosing confidential Praecipio property and using it to compete in his new position with catworkx; the same difficulty identifying the scope of those disclosures and uses applies. *Id*. at 24. Similar types of evidence are relevant to Praecipio's claim for breach of the duty of loyalty, which alleges that Areias and Howser secretly coordinated with catworkx to prepare for its entry into the U.S. market and to target Praecipio's client and business opportunities. *Id*. at 24–25.

Because this case is fundamentally about the improper transfer and use of Praecipio property that was stored on Defendants' work laptops, the destruction of the laptop that Areias performed his Praecipio work on for many years is irreversibly damaging to Praecipio's ability to prove its case. As such, most of the available lesser sanctions are insufficient. Monetary sanctions below the amount recoverable by a default judgment will not meaningfully remediate the spoliation. *See Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC-RMI, 2021 WL 11108111, at *6 (N.D. Cal. June 1, 2021) (finding that monetary sanctions would not cure the spoliation unless they equal the full amount of damages to which Plaintiffs can establish an entitlement, in which case they would be equivalent to default judgment). Likewise, the scope and effect of the spoliation is too great to be addressed by excluding Defendants' evidence; given the destruction of Areias's entire Lenovo laptop, there is no sense in which proportional or corresponding evidence presented by the Defendants could be identified and then stricken. *Cf. Flowers v. Fred Hutchinson Cancer Rsch. Ctr.*, No. C17-0989-JCC, 2018 WL 6019276, at *4 (W.D. Wash. Nov. 16, 2018) (excluding evidence to compensate for the evidence spoliated).

The Court also considered sanctions targeting specific elements of Praecipio's claims, either through an adverse inference instruction or a finding that such elements have been conclusively established. The elements of the three claims on which Praecipio seeks default judgment against Areias are as follows. The first, for trade secret misappropriation under the DTSA, requires that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. *See Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 907 (N.D. Cal. 2023). A "trade secret" exists if (a) "the

owner thereof has taken reasonable measures to keep such information secret"; and (b) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). To establish misappropriation, Plaintiffs must prove that Defendants "improperly acquired, disclosed, or used the trade secret." *Beluca Ventures LLC*, 660 F. Supp. 3d at 910. The elements of a cause of action for breach of contract are: (1) the existence of a contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach of a contractual obligation; and (4) that defendant's breach was a substantial factor in causing harm to the plaintiff. CACI No. 303. Finally, the elements of a cause of action for breach of duty of loyalty are: (1) the existence of a fiduciary relationship between plaintiff and defendant; (2) defendant's knowing act against plaintiff's interests in connection with the underlying transactions/events; (3) plaintiff did not give informed consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm. CACI No. 4102. The Court considers the appropriate sanction for each claim in turn.

**a. DTSA Claim**

A default judgment sanction on Praecipio's DTSA claim is warranted. As Praecipio argues in its supplemental briefing, Areias's spoliation affected all three elements of a DTSA claim by obscuring which trade secrets Areias misappropriated. ECF No. 124 at 21–26. For the reasons outlined above, the spoliation is most clearly relevant to the misappropriation element: the spoliated evidence could show which files Areias accessed and when, allowing Praecipio to connect those points of access to meetings with his new employer or with customers. But without that data, Praecipio cannot narrow down—to only those Areias actually misappropriated—the asserted trade secrets for which it must establish ownership, trade secrets status, and causation. In other words, an instruction finding only the misappropriation element established would place on Praecipio the impossible burden of establishing ownership, reasonable protection, economic value, and a causal relationship between misappropriation and damages for every trade secret Areias could possibly have misappropriated. ECF No. 124 at 21–22, 26.

In part for the same reasons, an adverse inference sanction as to some or all elements of the DTSA claim would not suffice. First, a generic instruction directing the jury to consider the evidence lost unfavorable to Areias does not match the conduct here, which was severe. Moreover, "fashioning a jury instruction that creates a presumption in favor of [Defendants] 'would leave Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption." *Leon*, 464 F.3d at 960. That is especially true here because the spoliation prevents the parties from establishing which trade secrets were actually misappropriated. As a peer district court held, "[a] *refutable* presumption that [the defendant's] spoliation establishes liability for trade secret misappropriation is an inadequate remedy because the spoliation deprived [the plaintiff] of evidence necessary to counter a rebuttal by [the defendant]." *Roadrunner Transportation Servs., Inc. v. Tarwater*, No. SACV101534AGMLGX, 2012 WL 12918366, at *4 (C.D. Cal. May 31, 2012), *aff'd sub nom. Roadrunner Transp. Servs., Inc. v. Tarwater*, 642 F. App'x 759 (9th Cir. 2016). "And a *conclusive* presumption that [the defendant's] spoliation establishes liability for trade secret misappropriation is tantamount to default judgment because the spoiled evidence is relevant to the entire case." *Id.* Default judgment is warranted on Praecipio's DTSA claim and no lesser sanction would suffice to address the spoliation.

**b. Breach of Contract Claim**

As to claim two for breach of contract, the Court finds justified the lesser sanction of conclusively establishing only certain elements. Areias's spoliation had no bearing on Praecipio's ability to establish the existence and its performance of the relevant contracts. ECF No. 124 at 32–33. Otherwise, the Court's analysis of the DTSA claim applies with equal force here. The remaining elements of the breach of contract claim are irreparably infected because Areias's spoliation left Praecipio unable to determine the scope of Areias's use and disclosures of confidential information—the basis for the claim of breach.

Areias argues in his supplemental briefing that such sanctions are "issue preclusion" sanctions and are unavailable under Rule 37(e)(2). ECF No. 124 at 13–15. His argument mischaracterizes governing Ninth Circuit precedent and contradicts the Rule 37 advisory

committee notes. In *Gregory*, the Ninth Circuit considered just the type of sanction the Court grants here, concluding that "[t]he district court's order instructing the jury to take as established that Williams had used excessive force in violation of the Fourth Amendment was simply a more severe form of the sort of presumptions covered by Rule 37(e)(2)." 118 F.4th at 1079. "Indeed, the instruction was effectively a conclusive presumption that the lost video was so unfavorable to the State on the issue of excessive force that that ultimate fact at issue should be taken as resolved in Gregory's favor." *Id.* While the Ninth Circuit overturned this sanction, it did so only on the grounds that district court had not made the findings that are required by Rule 37(e)(2). *Id.* at 1080 ("Although the district court thus invoked the wrong source of legal authority in imposing the sanctions that it did, its error on that score would be harmless if the record reflects that the district court did in fact make the findings that are required by Rule 37(e)(2)."). The Court has made the necessary findings here.

Moreover, in adopting Rule 37(e)(2), the federal rules advisory committee was careful not only to give trial judges the power to enter default on all claims in an appropriate case, but also to caution them not to do so where a lesser measure may redress the misconduct. "The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when . . . lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. Areias essentially argues that while it may impose a default judgment sanction, it may not exercise its discretion to curtail the severity of that remedy. But this Circuit's caselaw requires the Court to identify the least severe appropriate sanction. Were the Court's preferred remedy unavailable, it would be compelled to resort to the remaining least severe appropriate sanction: default judgment.

### c. Breach of the Duty of Loyalty Claim

Finally, Praecipio seeks default judgment on its fifth claim for breach of the duty of loyalty. Unlike the other claims "focusing on post-resignation misappropriation, this claim targets Defendants' disloyal conduct while still employed." ECF No. 124 at 34. Specifically, it alleges that Areias coordinated catworkx's U.S. market entry, solicited Praecipio clients for catworkx, and recruited Praecipio employees for catworkx. *Id.* at 34–35.

Praecipio's arguments that the destruction of the laptop harmed its ability to prove certain elements of the loyalty claim are weak. They seek "business plans created for catworkx while on Praecipio's payroll; customer files accessed for solicitations; communications about recruiting employees; and the full coordination timeline," *id.* at 35, but provide little reason for the Court to conclude these were lost because of Areias's spoliation. First, the claim focuses on Howser's conduct, but Howser's discoverable material, which was not spoliated, would presumably include evidence of Areias's collaboration in his disloyal activities. *Id.* Second, Areias provided in discovery a laptop backup containing many of his pre-January 2 files, and Praecipio has not argued that any documents created for catworkx or communications with them would be excluded from that backup. Third, much of the allegedly lost data is apparently available through other sources. For instance, Areias's email metadata and calendar data was stored on servers, not locally on his destroyed hard drive. *Id.* at 38, 39. Similarly, server logs compensate for at least some of the missing metadata showing Areias's access to confidential files—which in any case is far less central to Praecipio's loyalty claim than its DTSA claim. *Id.* at 37, 39.

Although Praecipio's arguments concerning the loyalty claim are comparatively weaker, it remains true that Areias's destruction of his laptop prevents Praecipio and the Court from ascertaining whether files and data contained only on that laptop would have aided Praecipio in establishing this claim. *See Lee*, 2025 WL 2505484, at *9 ("[T]hat is precisely the problem that arises in spoliation cases—the party claiming spoliation does not know what it does not have."). And as the Court explained above, the criteria for sanctions under Rule 37(e)(2) have been easily met. Balancing these considerations, the Court will therefore grant a rebuttable adverse inference instruction stating that the jury may consider the spoliated evidence unfavorable to Areias on this claim.

***

Because Praecipio's ability to prove multiple claims has been "inalterably prejudiced" by Areias's intentional spoliation, the Court grants a default judgment against Areias on claim one, a finding that certain elements of claim two are conclusively established, and an adverse inference instruction on claim five. ECF No. 75-2 at 28. This outcome is justified not only by the need to

remediate Areias's spoliation, but also by the need to deter future parties from equally audacious acts. Areias broke his hard drive into more than ten pieces, which would likely have required machinery or heavy tools. His only explanation for doing so is that he had a pre-existing plan to recycle his old devices—but that does not explain why he destroyed his hard drive after learning that it could not be recycled. Areias has provided no plausible explanation for destroying his hard drive three days after receiving an evidence preservation demand letter and a default judgment sanction is warranted.

**B. Additional Arguments Raised by catworkx**

Defendant Catworkx filed a separate brief bringing arguments under the third and fourth *Anheuser-Busch* factors, which are not relevant to sanctions under Rule 37(e)(2). ECF No. 93 at 8–9. The Court nonetheless finds it prudent to address two of catworkx's arguments.

**1. The *Frow* Principle**

Catworkx argues that a default judgment against Areias would violate the principle set out in *Frow v. De La Vega*, 82 U.S. 552 (1872). In *Frow*, the Court held that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow*, 82 U.S. at 554). This is because it would be "incongruous and illegal" to enter judgment against a defaulting defendant even though the result of litigation against joint co-defendants showed that the defaulting defendant was not liable. *Frow*, 82 U.S. at 554.

"*Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001). The conduct alleged in Praecipio's complaint does not require the court impose liability uniformly amongst the defendants. Rather, Areias may be liable for misappropriation of trade secrets under the DTSA, breach of contract, and breach of duty of loyalty—the causes of action for which Praecipio seeks a default judgment—without implicating Howser and catworkx's liability.

The only allegation in the complaint of "joint and several" liability concerns an alleged civil conspiracy. ECF No. 53 ¶ 99. But first, the complaint does not include a cause of action for civil conspiracy. ECF No. 53. And second, a civil conspiracy theory cannot be sustained by any of the causes of action upon which Praecipio seeks a default judgment. The DTSA does not allow private claims for civil conspiracy. "While definitive answers are lacking, the weight of authority tips against the viability of conspiracy claims based on misappropriation of trade secrets under the DTSA." *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021); *see Genentech, Inc. v. JHL Biotech, Inc.*, Case No. 18-cv-06582-WHA, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action) (citing *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 840–44 (E.D. Va. 2017)). "Likewise, there is no cause of action for civil conspiracy to breach a contract." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 5000237, at *5 (N.D. Cal. Nov. 21, 2008).

Moreover, *Frow* appears to be motivated by concern for fairness to the defaulting party. *See* 82 U.S. at 554 ("It would be unreasonable to hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree."). But here, there is nothing unfair or illogical about imposing a default judgment sanction on Areias because his conduct in spoliating evidence supports an inference that he is liable for the claims alleged. *See Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1009 (declining to apply *Frow* where default judgment against some defendants would not be inconsistent with a judgment in favor of appearing defendant). Only Areias intentionally spoliated evidence, therefore only Areias is assumed to have committed the conduct alleged and receives a default judgment sanction to address his spoliation. Under these circumstances, courts routinely allow default judgment to be entered against one co-defendant but not others. *See, e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1190 (9th Cir. 2009).

Catworkx has also failed to explain how a default judgment could be used against it. Catworkx suggests that Plaintiffs could seek to apply a judgment against Areias against the other

United States District Court
Northern District of California

co-defendants, but fails to adequately explain how. And although catworkx also raises the possibility of jury confusion, it gives no reason to suspect that a limiting instruction would not be sufficient to address any possible prejudice.

**2. Ripeness**

Catworkx also suggests that a default judgment sanction is premature because discovery has not concluded, ECF No. 93 at 14, but as Praecipio argues, "[t]here is no discovery that can recreate or cure the destruction of the laptops (and the documents and forensic artifacts contained therein)." ECF No. 97 at 24. The motion is ripe for resolution.

**CONCLUSION**[5]

---

[5] After briefing for this motion was complete, Areias filed a motion for leave to file new evidence in connection with this motion. ECF No. 161. That motion is granted. The evidence it describes, however does not affect the Court's conclusion concerning the propriety of sanctions for Areias's spoliation.

Exhibit A to the motion for leave, ECF No. 164, provides evidence that Sophos antivirus software was installed on Areias's Lenovo laptop, and that Sophos records a "last active" date for enrolled devices, as well as recording certain device activity if the device is turned on, the user is logged into the device, and the device is connected to the internet. The device activity detail is stored on logs subject to an automatic 30-day retention policy. In his motion for leave, Areias notes that Praecipio could have, but did not, extend the retention period of the Sophos logs for the Lenovo laptop, and that "[s]uch activity logs would have reflected whether, during the period January 3 to 17, 2025, [Areias] had turned on and logged into the Lenovo while connected to the internet." ECF No. 161 at 10. As a preliminary matter, the "last active" date implies that Sophos captured no activity after January 2, so it is not clear to the Court what additional utility the logs could provide.

Notably, moreover, Sophos "does not log activity if the device is not connected to the internet." Therefore, the Sophos "last active date" does not mean that such date was the late date and time a laptop was used—it just reflects the last time the laptop was used in a way that connected it to the internet. In other words, Areias could have used the laptop, including to access or transfer locally stored data, without being connected to the internet. One might even *expect* a departing employee seeking to avoid surveillance by his former employer to avoid connecting to the internet. A much better source of information regarding Areias's use would have been the laptops' own internal logs, but Areias destroyed those logs when he destroyed the laptops. ECF No. 143 at 2–4. Accordingly, this evidence, even if considered, would not have changed the conclusions in this order.

Exhibit B attaches deposition testimony about Praecipio's practices regarding company laptops and the experience of Praecipio human resources director concerning her company-issued laptops. Because the Court's order relies heavily on Areias's disregard of the evidence preservation letter, Exhibit B is irrelevant to the Court's consideration.

Exhibits C through E are Slack messages between two Praecipio managers regarding the return of and number of Areias's company laptops. This evidence is irrelevant for the same reason. In addition, these managers' understanding that the Lenovo laptop did not "belong" to Praecipio,

Defendants assert that "[t]his is not a case where, after a lawsuit was filed or court orders were entered, a party nefariously and permanently deleted relevant evidence." ECF No. 90-2 at 8. It is, however, a case where, after a letter demanding evidence preservation and threatening legal action was sent, a party nefariously and permanently deleted relevant evidence. The Court grants Praecipio's motion for a default judgment sanction in part and enters default judgment against Defendant James Areias for Plaintiffs' First Claim for Relief. The Court also finds that Praecipio has conclusively established the breach, causation, and damages elements of its Second Claim for Relief for breach of contract. Finally, Praecipio has justified an adverse inference instruction stating that the jury may assume the spoliated evidence is unfavorable to Areias on its Fifth Claim for Relief.[6]

**IT IS SO ORDERED.**

Dated: July 30, 2026

JON S. TIGAR
United States District Judge

---

ECF No. 160-5 at 60, is particularly immaterial given that Areias—and not these managers—knew that he had performed all his work for Praecipio for years on the Lenovo laptop.

[6] Areias argues in the supplemental briefing that, having sanctioned his spoliation, the Court should exclude all evidence of that spoliation from the jury. ECF No. 124 at 20. He does not explain why the Court should decide such matters at this stage rather than on a pretrial motion in limine.